SAMUEL COGGSWELL v. AMY BALDWIN.

Whether an action is *trespass*, or *trespass on the case*, is to be determined from the facts alleged in the declaration, and not from the name given to the action.

The owner of a cow, accustomed to hook—the vicious propensity being known to her owner—is liable for damage done by her, although it be done in the highway against the land of her owner, and while going to her usual watering place.

If the injury, in such case, is occasioned by the negligence of the owner of the animal injured, he will not be entitled to recover.

THIS case was brought by appeal from a justice of the peace. The declaration, in the original writ, was in a plea of " *trespass*," in which the plaintiff proceeded to allege that the defendant was possessed of a cow accustomed, and known by her to be accustomed, to hook, which she suffered to go at large, and which, while thus at large, hooked the plaintiff's horse so that he died,

On the entering of the appeal in the county court, the <span>BENNINGTON,</span> plaintiff offered to file a declaration in a plea of " *trespass* *February,* *on the case*," followed by the same allegations as in the original writ—to which the defendant objected, as being variant from the original declaration ;—which objection was overruled by the court.

<span>BENNINGTON,<br>February,<br>1843.<br><br>Coggswell<br>v.<br>Baldwin.</span>

Plea, general issue, and trial by jury.

Upon the trial, testimony was introduced tending to prove that, on the 20th of February, 1841, the defendant was the owner of a cow which, some three years before that time, had hooked a horse, which was known to the defendant, and that buttons had afterwards been put upon the cow's horns. There was no evidence that the cow had ever been known to hook any other animal except the horse referred to, until the 20th of February, 1841; but there was evidence that the defendant had been heard to say, when horses were around, that they ought to be taken care of. There was, also, evidence tending to prove that, on the said 20th of February, 1841, about 3 o'clock, P. M., said cow, with several other cows of the defendant, were in the highway, nearly opposite the defendant's barn-yard, a short distance from their usual watering place, which was a stream crossing said highway ; that the bars opening from said yard into the highway had been let down, and that defendant owned the land on both sides of the highway ; that the horse in question was a fat, wild, and spirited animal, nearly two years old, and sufficiently broke to lead and drive in harness ; that the plaintiff's son had taken him about a mile from the stable where he had been kept, for the purpose of trying how he would match with another; and, after he had done, he took the halter from him and turned him loose, for the purpose of driving him home, as the halter belonged to the man living where the horse was let loose ; that he was followed by the plaintiff's son, but started away from him and ran rapidly the distance of 100 rods, and was out of sight for the period of five minutes, and while he first passed said cows ; that, after passing them, he returned among, and by, them, and while passing the cow in question, and in the road, she pitched at him and hooked him, so that, of the wound made by such hooking, he died.

Hereupon the defendant requested the court to charge

the jury, that, if they should find that the cow was in the highway, on the way to her watering place, and on the land of the defendant, under the circumstances above stated, it was not such an act of negligence on the part of the defendant, as to make her liable for the act of mischief done by the cow, even though it might have been then known to the defendant that the cow, before this, had hooked horses.

The defendant requested the court further to charge the jury, that, if they found that the horse was of the character testified to, and that known to the plaintiff and the plaintiff's son, the turning of him loose, and suffering him to make his way home under the circumstances stated in evidence, was such an act of negligence on his part as to prevent him from recovering in this action, for the act of the cow, even though the defendant might have been guilty of negligence in permitting the cow to be in the highway.

The court refused so to charge the jury, but charged that, if they should find that the cow had, before that time, hooked horses, and that this was known to the defendant, it was the duty of the defendant to restrain the cow, so as to prevent her from doing like mischief ; that, if the accident was occasioned by the negligence of the plaintiff, he could not recover ; but whether the turning of the horse loose under the circumstances, was an act of negligence on the plaintiff's part, was a question of fact for the jury and not for the court ; that the court did not consider it such an act of negligence as to prevent a recovery ; but of this the jury were to form their own opinion, from the evidence, and be governed by their opinion and not by that of the court.

To which charge, and refusal to charge, as requested, and the admission of said new declaration, the defendant, after verdict for the plaintiff, excepted.

*D. Roberts, jr.*, for defendant.

I. Was it competent for the court to allow the filing of the new declaration ?

One objection is, not that *the cause* of action set forth in the two declarations is different, but that the new declaration is variant from *the writ*, and thereby *the form* of action is changed. These words, *trespass*, and *trespass on the case*, have a meaing purely technical. The declaration accompa-

BENNINGTON.
*February,*
1843.

Coggswell
*v.*
Baldwin.

nying the writ, as our practice is, gave the action no other name than that given in the writ, to wit, a plea of trespass. The words " for that," were used in the declaration in setting forth the injury, instead of the words " for that whereas," which last are the distinguishing ear-mark of the action upon the case. Ham. N. P. 22.

But the writ was the foundation of the action. It has never been amended, and could not be by the county court, for it was not before them. The action there was trespass, and the court permitted it to be changed. " When the title ' of the writ is of one form of action, then the declaration ' can never change it to another, for the declaration is but ' an exposition of the writ, and must, therefore, agree there- with." Bac. Ab. Pleas and Pleadings, (B.) 4; 3 Bl. Com. 293. " It is the writ which gives the court au- 'thority to proceed in any suit." Gould's Pl. 270. In *Rogers* v. *Rogers*, 4 Johns. R. 485, the *ca. ad. resp.* con- tained an *ac etiam* clause upon promises for 500 dollars, and the declaration was in account. In *Durfee* v. *Heemstreet*, 1 Wend. R. 305, the *ac etiam* clause in the capias was in tres- pass, for entering the close of the plaintiff, and debauching his daughter. The plaintiff declared in case ; and, after de- fault entered, the proceedings were, as in the case above, up- on motion, set aside for irregularity.

In England, in bailable actions, the declaration must cor- respond with the cause and *form* of action in the *ac etiam* part of the latitat, or other process, or the defendant will be discharged on common bail. 1 Ch. Pl. 254. The reason that no other effect is given to the variance there, is found in the constitution of the English courts—to sustain a jurisdic- tion which was originally an encroachment, leading to the es- tablisment of a rule, that the defendant, once in the custody of the court upon a fictitious cause of action, may be de- clared against in any other action. *Vide* 3 Bl. Com. Ch. 4 *passim.* A further reason is found in a rule of those courts, whereby the writ is treated as no part of the record, nor can it be made so, even upon oyer craved. 1 Wms. Saund. 318, n. 3; *Emerson* v. *Willson*, 11 Vt. R. 359 ; *Davis* v. *Owen et al.* 1 Bos. & Pul. 342.

In debt on statute for a penalty, where part is given to an informer and part to the king, the declaration need not state

BENNINGTON, that the plaintiff sues *qui tam*, &c., 1 Ch. Pl. 356, unless the
February, writ be so; but if the writ be so, and the declaration is in
1843.
 his own name only, the proceedings will be set aside for the
Coggswell
*v.* variance. *Canning* v. *Davis*, 4 Burr. 2417.
Baldwin.       " It has been frequently decided in this state, and may be
regarded as a settled rule of law, that an amendment cannot
be granted, which changes *the form* of action ;" Prentiss, J.
in *Carpenter* v. *Gookin*, 2 Vt. R. 495, in which case the
court cited, approvingly, *Haynes et ux.* v. *Morgan*, 3 Mass.
R. 208, where Parsons, C. J. says, " to alter a plea of *the
case* to a plea of debt or *trespass*, is not within the discre-
tion of the court." " An amendment cannot be granted
which changes *the form* of the action ;" Mattocks, J. in
*Bucklin* v. *Ward*, 7 Vt. R. 197. " Allowing an amendment
which changes entirely the *form* of action is error ;" Wil-
liams, C. J. in *Emerson* v. *Willson*, 11 Vt R. 359. " A
court may, in its discretion, allow amendments in a declara-
tion, which do not change the *form*, or nature of the action,
&c ;" Collamer, J. in *Skinner* v. *Grant*, 12 Vt. R. 462 ; 1
Sw. Dig. 639.

We find, then, no rule less rigid than this—that the form
of action given in the writ, shall not be changed. It has the
advantage of certainty, which is much. It should be inflex-
ible, or it is nothing. Why not change trespass *de bonis
asportatis*, in the writ, to trover in the declaration ? Why
not trespass to case, and assumpsit to trover, as was attempt-
ed in *Durfee* v. *Heemstreet*, and *Carpenter* v. *Gookin* ? Be-
cause of the rule. Inflexibility, and hence certainty, is its
chief virtue.

II. We regard the charge of the court, as to the duty of
the defendant in restraining the cow, to be erroneous in two
aspects.

1. In charging that this duty arose from the defendant's
knowledge that the cow had, three years before, under some
circumstances, not detailed, hooked a horse, instead of the
defendant's knowledge that the cow was *used and accus-
tomed* to hook horses. So are all the precedents. *Buxen-
din* v. *Sharp*, and *Jenkins* v. *Turner*, 2 Salk. 662; 8 Went.
Pl. 437, 581 ; 2 Ch. Pl. 288–9 ; *Jones* v. *Perry*, 2 Esp. R.
482 ; *Vrooman* v. *Lawyer*, 13 Johns. R. 339 ; and so is
this declaration. The action lies not, unless the owner have

previous knowledge of the animal's "mischievous *propensity.*" 1 Ch. Pl. 69.

2. The charge implies, that the defendant was to be treated as an insurer against the acts of the cow; the words of the charge being, "it was the duty of the defendant to restrain the cow, *so as to prevent her from doing like mischief.*" This complaint comes under the head, in Com. Dig., of "Action upon the case *for negligence.*"

As to the *scienter*—that is material, only because, without a knowledge of the mischievous propensity of the animal, negligence in restraining it, could not be predicated of the conduct of the owner. With such knowledge, the legal obligation so to deal with the animal as, *in all reasonable probability*, to prevent the doing of accustomed mischief by it, would arise. But the character and degree of the requisite cautionary dealing would necessarily vary with the *species*, and the particular character of the individual animal, and all the probabilities of mischief being done in a particular case. In every case, therefore, it must be a question whether, under the circumstances, *due diligence*, has been used to prevent a probable mischief. This is a question of fact for the jury, as was decided in another part of the case, but in this, the court decided it as a matter of law.

*H. Canfield,* for plaintiff.

1. The amended declaration neither changed the form of action nor introduced a new cause of action. In the original writ, though the action is called trespass, yet the cause of action is set forth in the form of an action on the case, and with all the technical accuracy necessary to describe the injury in that form of action. The injury is alleged to have been consequential, and not *vi et armis* and *contra pacem,*— both of which are necessary in actions of trespass. 1 Ch. Pl. 135, 171. The scienter of the defendant, of the cow's malicious propensity, is also alleged. 1 Ch. Pl. 70.

The omission of the words, "on the case," after the word trespass, was evidently a clerical error. The county court, therefore, could, in their discretion, allow or reject the amendment; and their decision cannot be reversed by this court. 2 Aik. R. 276; 2 Vt. R. 495; 7 Vt. R. 195.

2. Such law as is contended for by the defendant, would

not arise from the facts, if the evidence is to be believed; and the charge must have been against the defendant; consequently a refusal to charge as requested, is not error. 5 Vt. R. 136; 2 Vt. R. 314. The requests to charge present questions of negligence, which are questions of fact, for the jury. 3 Stark. Ev. 993, n. o, and the cases there cited; 6 Vt. R. 245. They, at least, involve questions of fact; and if of a mixed character, are proper for the jury. 3 Stark. Ev. 1243; 5 Vt. R. 97.

If the defendant had a right to suffer her cattle to go into the highway for the purpose of watering, she could only do so in a manner consistent with the right of others, to use it as a public easement, although she owned the soil. 3 Kent's Com. 427; Sw. Dig. 106. Permitting the cow so to do, was in contravention of this principle, as well as of the doctrine that owners of cattle are liable for injuries done by them, if they have notice of their mischievous propensity, unless caused by the neglect of the party injured. 1 Ch. Pl. 70, 167.

The opinion of the court was delivered by

HEBARD, J. — By our statute, the plaintiff, at the time he sues out his writ, is required, also, to make out his declaration of his claim, which goes along with the writ; and this, of course, must determine the nature of the action. If it were usual or allowable for the plaintiff to call the defendant into court, by merely stating the *name* of the action, without making any statement or specification of his claim, there would be more propriety in regarding the name, alone, as of some importance. The reason for having the cause of action declared and set out, is, to give the defendant notice of what is to be preferred against him; and, that being done, there is no principle of law better settled than that he cannot afterwards change the *form* of action. The authorities are full on this subject. But the action, and consequently the *form* of it, depends much more upon the matter alleged and set forth as the ground of the claim, than upon the mere *name* that happens to be given to it.

In *Carpenter* v. *Gookin*, 2 Vt. R. 495, the court say that "as a description of the matter of demand, or cause of action, so far as to specify the general nature of the action,

is all that is usual, or necessary in a suit before a justice of the peace, the plaintiff is at liberty, when the cause comes by appeal to the county court, to file a declaration in proper form, upon the particular cause of action, described or specified in the writ." In this case, and in a number of other subsequent cases, in this state, the "*nature of the action*," and the "*cause of the action*," and the "*form of the action*," are indiscriminately spoken of when discussing this question ; but in no case, I believe, is any thing said about the *name* of the action.

Swift in his Digest, page 639, uses similar language. He says, the plaintiff may amend, "provided he does not change the *form* or *ground* of action."

Cowen's Treatise, 333, is full on this point. It is there laid down that "the cause of action, stated at length, shall be deemed the true one," and not the *name* by which it is called. In this case, the plaintiff, in his original declaration before the justice, commenced his declaration by stating, "in a plea of trespass," and then proceeded to state the ground of his complaint, in such a way as did not admit of its being trespass, — in other words, he so stated it as to make it *trespass on the case.* No act is alleged against the defendant, only a neglect, or an omission to do that, which, if it had been done, the plaintiff would not have sustained the injury. The new declaration which he filed in the county court, counted upon the same facts as the original declaration, and recited the same transaction, and nearly in the same words, in the most important parts.

It could not, then, be changing the *cause of action*, or the *form of action.* This disposes of all there is objectionable in the declaration.

The next objection is to the charge of the court.

On the trial in the county court, the defendant requested the court to give the jury certain instructions in relation to certain negligences of the plaintiff, on account of which, he was not entitled to recover ; and upon this request to charge the jury, and refusal to charge as requested, the defendant excepts, and not from the general charge of the court, in relation to the plaintiff's right to recover, nor from a charge given at the request of the plaintiff. This is important to be noticed in considering the case. If the court had been request-

ed to charge the jury in relation to the extent and nature of the *evil propensity* of the cow, and the extent of the defendant's knowledge of that propensity, we might suppose that all that is detailed in the bill of exceptions, is all that was said upon that part of the case. From what comes to us in the bill of exceptions, it will be seen that the defendant was raising no question in relation to the evil propensity of the cow, nor of defendant's knowledge of that propensity, but it was in the first place, that defendant was not liable on account of the place in which the injury was sustained, and, in the next place, that the injury happened through the negligence of the plaintiff, and that the defendant, therefore, was not liable. But we think the defendant was not entitled to such a charge upon either of these points. If the cow had this *vicious habit,* and this was known to defendant, it ... her duty to have restrained the cow, — and, in regard to the question of negligence on the part of the plaintiff, that must depend upon the attendant facts and circumstances, and was properly submitted to the jury. It will be noticed that so much of the charge as is set forth in the bill of exceptions, is in relation to the request of the defendant, relative to those points already stated, but does not pretend to be a statement of the charge of the court, in relation to what was necessary to have been proved by the plaintiff, in relation to the *mischievous propensity* of the cow, nor of the defendant's knowledge, — and what the charge of the court was, in relation to that part of the case, does not appear, excepting what is incidentally stated in the other part of the charge : — and we perhaps, would be justified in presuming that the charge in that respect, was unobjectionable, or the defendant would have excepted to it at the time.

The case finds that the cow, on one occasion, had hooked a horse, and that was known to the defendant, and she caused buttons to be put upon her horns, as a preventive. Only one act of hooking, before the one complained of, was proved. Still, others might have existed,—and how far the circumstances tended to prove it, or would authorize a jury to arrive at that conclusion, is not for this court to say. It is enough to say that they might have that tendency.

But, taking the charge of the court upon the *mischievous propensity* of the cow, as it has come to us, we discover

nothing erroneous in it, although it might have been more full. It is evident the court did not intend to rest it upon a single act of hooking, for, when speaking of hooking horses, the court used the expression in the plural number, and did not confine it to a single instance.

Upon the whole, we are satisfied with that part of the charge to which the defendant excepted; and in relation to the other, if we are at liberty to revise it, without its being excepted to, we are not convinced, from what appears in the case, that there was any error.

Judgment affirmed.